## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Roger William Bannister,

        Plaintiff,

Civ. No. 07-1662 (RHK/AJB)
**MEMORANDUM OPINION AND ORDER**

v.

Bemis Company, Inc.,

        Defendant.

Brian E. Cote, Cote Law Office, Minneapolis, Minnesota, for Plaintiff.

Matthew E. Damon, David A. James, Halleland Lewis Nilan & Johnson PA, Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

Plaintiff Roger William Bannister alleges in this action that Defendant Bemis Company, Inc. ("Bemis") breached a non-compete agreement (Count 1).[1] Bannister has moved for summary judgment, arguing that Bemis violated the non-compete agreement when it refused to pay his monthly base salary after his termination. Bemis has cross-moved for summary judgment, arguing that it did not have a contractual duty to pay Bannister under the non-compete agreement. For the reasons set forth below, the Court will grant Bannister's Motion and deny Bemis's Motion.

---

[1] Banister also alleged claims of tortious interference with prospective advantage (Count 2), fraud (Count 3), and promissory estoppel (Count 4). Bannister, however, later stipulated to the dismissal of these claims. Accordingly, only his breach-of-contract claim remains.

**BACKGROUND**

**I.     The Parties**

Bemis designs and produces customized packaging products, primarily for the food industry. (Compl. ¶ 3.) Bemis hired Bannister in 1991 to work at its facility in Crossett, Arkansas. (Damon Aff. Exs. A, B.) Bannister worked as a Production Manager until 1999, when he was promoted to Plant Manager. (Id. Ex. B.) In 2000, Bemis promoted him to Director of Technical and Product Development. (Id.) In this role, Bannister became familiar with Bemis's (a) methods for producing packages using its proprietary designs, (b) technical data charts and tables used in producing patented products and in acquiring patents on proprietary valves, and (c) customers' technical needs, contact people, pricing, and purchasing practices. (Stone Aff. ¶ 5.)

**II.    The Non-Compete Agreement**

In December 2000, the parties entered into a Confidentiality and Non-Competitive Agreement ("NCA") that prohibited Bannister from rendering services to any competitor for a period of 18 months following termination of his employment.[2] (Cote Aff. Ex. A.) The NCA also provided that if Bannister were unable to obtain other employment because of the provisions of the NCA, "such provisions shall continue to bind [him] only as long as Bemis, in its sole discretion, shall make payments to [him] equal to [his] monthly base salary at the time of [his] termination . . . for each month of such unemployment." (Id.) In order to receive these payments, however, Bannister was

---

[2] The record indicates that Bannister received a salary increase and shares of stock in exchange for the NCA. (Damon Aff. Ex. A at 44, 48.)

required to provide Bemis with "a detailed written account of [his] efforts to obtain employment" and a sworn statement indicating that he (1) was unable to obtain employment solely because of the NCA and (2) had "made a good faith and aggressive effort to obtain employment consistent with [his] abilities and education[.]" (Id.) Bemis was not required to make these monthly payments for any month in which Bannister failed to account to Bemis. (Id.) Finally, notwithstanding the foregoing, Bemis would not be required to pay Bannister a monthly salary if it notified him within five working days following his termination that it would not enforce the provisions of the NCA. (Id.)

### III. Bemis's Litigation with Mondi Packaging

In March 2004, Bemis filed a lawsuit against Mondi Packaging ("Mondi") and two former employees of Bemis who had accepted employment at Mondi, for misappropriation of trade secrets and disclosure of confidential information. (Damon Aff. Ex. E.) In October 2004, the parties to that action entered into a settlement agreement ("Mondi Settlement Agreement"), pursuant to which Bemis agreed to dismiss its lawsuit with prejudice and Mondi agreed not to hire (for a period of eighteen months) any employees of Bemis that were subject to a non-compete agreement. (Id.) Bemis subsequently provided Mondi with a list of its employees who were then subject to non-compete agreements, as well as updated lists every three months until the expiration of the eighteen-month period. (Id. Ex. F.) Each list contained approximately 140 to 160 names, including Bannister. (Id.)

## IV.  Bemis Discharges Bannister

In March 2004, Bannister requested that Bemis release him from the NCA because he had received a job offer from Mondi.  (Stone Aff. Ex. 2.)  Bemis denied his request.  (Id.)  In December 2004, Bemis offered Bannister a separation agreement that would have released him from his NCA, except for taking a position with Mondi, and given him a severance payment of $40,000.  (Id.)  Bannister, however, rejected this offer.  (Id.)  On January 14, 2005, Bemis terminated Bannister's employment, and paid him through January 15, 2005.  (Damon Aff. Ex. G.)   Bannister's ending base salary was $105,000 per year, or $8,750 per month.  (Cote Aff. Ex. E.)

## V.  Bannister Requests Payment of His Salary Pursuant to the NCA

On February 17, 2005, Bannister sent a letter to Bemis requesting that it start paying his monthly base salary because he was unemployed due solely to the NCA.  (Id. Ex. E.)  Bannister also enclosed a letter dated February 7, 2005, from Mondi, which had informed him that Mondi could not hire him because he was subject to a non-compete agreement with Bemis as of October 2004.  (Id. Ex. F.)  Bannister also indicated that he would provide a detailed account of his efforts to obtain employment and a sworn statement that he was prevented from finding employment due to the provisions of the NCA.  (Id. Ex. E.)

On March 31, 2005, Bannister sent a Job Contacts Log that detailed his job search through March 2005.  (Id. Ex. G.)   He also provided a sworn statement that he had made a good faith and aggressive effort to obtain employment, but had been unsuccessful because of the NCA.  (Id. Ex. H.)  Attached to his affidavit was the letter from Mondi,

4

which informed him that it could not hire him because he was subject to a non-compete agreement with Bemis. Bannister again requested that Bemis start paying his monthly base salary. (Id. Ex. G.)

On April 14, 2005, Bemis informed Bannister that he was free to work for any of its competitors, except for Mondi and its affiliates. (Id.) Bemis rejected Bannister's request for salary payments because it had a separate agreement with Mondi that barred Mondi from hiring individuals who were subject to a non-compete agreement as of October 2004. (Id. Ex. I.) On April 25, 2005, Bannister informed Bemis that he would pursue employment with Bemis's competitors, other than with Mondi, in the interest of mitigating his damages caused by Bemis's refusal to provide a full release from the NCA. (Id.) On April 27, 2005, Bemis reiterated that

> there are no damages involved in this matter and Mr. Bannister is not entitled to any payments under the agreement. This position is based on the fact that Mr. Bannister has been released to seek employment with any company other than [Mondi] and that irrespective of whether he was released to seek employment with [Mondi], [Mondi] cannot offer him employment based upon a separate agreement [Mondi] has with Bemis Company.

(Id. Ex. K.)

On October 24, 2005, Bannister commenced his employment with Bancroft Bag, Inc., a competitor of Bemis. (Id. Ex. M; Compl. ¶ 11.) Bannister was unemployed for a period of nine months and asserts that Bemis breached the non-compete agreement because it failed to pay him his monthly base salary during this time period. (Compl. ¶ 12.) He claims that Bemis owes him approximately $81,000. (Id. ¶ 13.)

5

**STANDARD OF DECISION**

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**ANALYSIS**

**I.    The Provisions of the NCA are Clear and Unambiguous**

The NCA contains an Arkansas choice-of-law clause and the parties agree that Arkansas law applies. (Cote Aff. Ex. A.) Under Arkansas law, when interpreting a contract, a court must try to determine and enforce the intent of the parties, "not from particular words or phrases, but from the entire context of the agreement." See Byme, Inc. v. Ivy, 241 S.W.3d 229, 236 (Ark. 2006). When a contract is unambiguous, its

6

construction is a question of law for the court. Fryer v. Boyett, 978 S.W.2d 304, 306 (Ark. 1998).

In the Court's view, the NCA is clear and unambiguous.[3] Under the NCA, Bannister was precluded from working for any competitor for a period of 18 months following the termination of his employment. The NCA also provides that if Bannister is unable to obtain other employment solely because of the NCA, *"such provisions shall continue to bind [him] only as long as Bemis, in its sole discretion, shall make payments to [him]* equal to [his] monthly base salary at the time of [his] termination . . . for each month of such unemployment." (Id. (emphasis added).) Thus, the NCA clearly, and unambiguously, states that if Bemis decides not to pay Bannister, then he is no longer subject to the NCA.

Notwithstanding the foregoing, Bemis did not have to pay Bannister a monthly salary if it notified him within five working days following his termination that it would not enforce the provisions of the NCA. The Court notes that this provision begins by stating, "[n]othwithstanding the foregoing" – in other words, it does not limit or alter Bemis's previously identified right to elect whether to pay Bannister in its sole discretion. Indeed, this provision merely provides an alternative, which allows Bemis to immediately repudiate enforcement of the restrictions of the NCA.

---

[3] The Court notes that Bannister argues in his opposition memorandum that the NCA contains ambiguous terms which would render the agreement illusory. (Pl.'s Opp'n Mem. at 10-14.) The Court fails to understand this argument, particularly when Bannister is the party suing to enforce the NCA; if the contract is void, as Bannister suggests, then Bemis would have no contractual obligation to pay Bannister. In any event, the Court finds that the NCA is clear and unambiguous.

7

Finally, in order for Bannister to receive a monthly base salary after his termination, he was required to provide Bemis with a detailed written account of his good faith efforts to obtain employment and a sworn statement that he was unemployed solely because of the NCA. If Bannister failed to comply with these conditions on a monthly basis, then Bemis would not have any obligation to pay him his monthly base salary.

Accordingly, the Court concludes that the terms of the NCA are clear and unambiguous. Indeed, as discussed above, the parties' obligations and the consequences from the breach of such obligations are set forth in the plain language of the NCA.

## II.  Breach of the NCA

There is no dispute that (1) the parties entered into a valid non-compete agreement; (2) Bemis discharged Bannister on January 14, 2005, which gave effect to the eighteen-month NCA; (3) Bannister asked Bemis for his monthly base salary in February and March 2005; (4) Bemis informed Bannister in April 2005 that he was free to work for any competitor of Bemis, except for Mondi; and (5) Bannister was unemployed for a period of nine months. Thus, the key issues before the Court are (a) whether Bannister was unemployed solely because of the NCA and (b) whether he complied with the conditions precedent such that it triggered Bemis's duty to pay him his monthly base salary while he was unemployed.

### A.  The NCA was the Sole Cause of Bannister's Unemployment

Bannister argues that he was unemployed solely because of the NCA. In particular, he asserts that Mondi wanted to hire him, but could not because of the NCA. Bemis, however, argues that the NCA was not the sole cause of Bannister's

8

unemployment. Specifically, Bemis asserts that it released Bannister from the restrictions of the non-compete when it informed him in April 2005 that he was free to work for any competitor of Bemis, other than Mondi. Bemis then argues that Mondi could not hire Bemis because of the Mondi Settlement Agreement and therefore Bannister's unemployment was not due solely to the NCA. This argument is meritless.[4]

The Mondi Settlement Agreement prohibited Mondi from hiring any Bemis employees who were subject to a non-compete agreement for a period of eighteen months. Bemis was required to provide Mondi with a list of employees who were subject to non-compete agreements. Bannister was subject to the NCA. Thus, the sole reason Mondi could not hire Bannister was because he was subject to the NCA. If Bannister was not subject to the NCA then Mondi could have hired him. In other words, if Bannister was not subject to the NCA then he would no longer have been on the list of employees subject to a non-compete that Bemis provided to Mondi pursuant to the Mondi Settlement Agreement. Accordingly, the Court concludes that Bemis did not fully release Bannister from the restrictions of the NCA. As such, Bemis was obligated to pay Bannister his monthly base salary as long as he met the conditions precedent in the NCA.

---

[4] Bemis also argues that the NCA was not the sole cause of Bannister's unemployment because some companies told him that there were no openings. (Def.'s Mem. at 17.) This argument is without merit. Obviously, there will be potential employers who will not even consider a job applicant due to their own hiring needs. The focus of the inquiry when interpreting the NCA is whether a prospective employer was willing to extend an offer of employment to Bannister, but could not hire him because he was subject to a non-compete agreement.

### B.   Conditions Precedent to Receiving a Monthly Base Salary

For Bannister to receive his monthly base salary after his termination, he was required, on a monthly basis, to provide Bemis with: (1) a sworn statement that he was unemployed solely because of the NCA and (2) a detailed written account of his good faith and aggressive effort to obtain employment.

Bannister argues that he is entitled to his monthly base salary from January 16, 2005, through October 23, 2005 – a period of nine months and eight days.  (Pl.'s Mem. at 16.)  The record shows that on February 17, 2005, Bannister requested that Bemis start paying his base salary because he was unemployed solely due to the NCA.  Bannister also enclosed the letter from Mondi, which had informed him that Mondi could not hire him because he was subject to a non-compete agreement with Bemis as of October 2004.  He also indicated that his sworn affidavit and detailed account of his job search was forthcoming.  Then, on March 31, 2005, Bannister provided Bemis with a Job Contacts Log that detailed his job search for the time period of January 16, 2005, through March 2005, together with his sworn statement that he had made a good faith effort to obtain employment, but had been unsuccessful because of the NCA.  (Cote Aff. Ex. G.)  Attached to his affidavit was the letter from Mondi.  Thus, the Court finds that Bannister is entitled to his monthly base salary for this time period.

The next question is whether Bannister is entitled to his monthly base salary for the time period of April 2005 through October 23, 2005.  The record shows that Bannister only provided Bemis a sworn statement and documentation regarding his efforts to obtain employment for the time period of January 16, 2005, through March

2005. Bemis, however, made it clear to Bannister in April 2005, that it was not going to pay him his monthly base salary. As such, the Court finds that it would have been futile for Bannister to send Bemis further documentation of his job search after Bemis rejected his claim for his monthly base salary. Nevertheless, Bannister continued to document his job search and has submitted it to the Court. (Id. Exs. H, M.) The Court has reviewed Bannister's documentation and is satisfied that he has substantially complied with the conditions precedent; accordingly, he is also entitled to a monthly base salary for the time period of April 2005 through October 23, 2005.[5]

Finally, Bemis does not dispute that Bannister conducted his job search in good faith. (Def.'s Opp'n Mem. at 7.) Bemis does, however, argue that Bannister's efforts to obtain employment were not aggressive because he did not contact many prospective employers and did not seek assistance from a headhunter or an internet career database. (Def.'s Mem. at 11-12; Def.'s Reply Mem. at 20.) The Court disagrees. There is nothing in the NCA that requires Bannister to contact a certain number of potential employers nor does it specify that he is required to use the services of a headhunter or an internet career database. The record shows that Bannister sought assistance from the local unemployment office in Crossett, Arkansas. In order to receive unemployment benefits, he had to engage in a job search and report to the unemployment office on a weekly basis, which he did. (Bannister Dep. at 100-02; Bannister Aff. ¶ 9.) Furthermore,

---

[5] Bemis does not challenge the sufficiency of Bannister's documentation. Instead, Bemis argues that Bannister failed to provide it with this documentation on a monthly basis. But, as explained above, it would have been futile for Bannister to continue to provide this documentation when Bemis specifically told him that he was "not entitled to any payments under the agreement." (Cote Aff. Ex. K.)

11

Bannister's documentation shows that he placed and received phone calls from several employers within his field and he used his resume, referrals, and in-person meetings to advance his employment search.  (See Cote Aff. Exs. H, M; Bannister Aff. ¶¶ 4-9.)  Such evidence demonstrates that Bannister's efforts to obtain employment were aggressive.  Accordingly, the Court concludes that Bannister is entitled to his monthly base salary from January 16, 2005, through October 23, 2005.  Based on a salary of $8,750 per month (or $287.67 per day), Bannister is entitled to $81,051.36.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Bannister's Motion (Doc. No. 9) is **GRANTED** as to his breach-of-contract claim (Count 1).  Bannister is entitled to a total of $81,051.36;

2. Bemis's Motion (Doc. No. 13) is **DENIED**; and

3. Count II of Bannister's Complaint is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  February 15, 2008

                                               s/Richard H. Kyle
                                               RICHARD H. KYLE
                                               United States District Judge